UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA L. (BARRUS) PEASE,

    Plaintiff,

v.                                              Case No. 1:13-cv-1122

                                                      Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Supplemental Security Income (SSI).

Plaintiff was born on June 30, 1962 (AR 150).[1] This appeal involves an application for SSI filed on April 22, 2011, alleging a disability onset date of December 1, 2003 (AR 16). This is plaintiff's second application for benefits. She previously applied for Disability Insurance Benefits (DIB) and SSI in 2004, with the applications being denied at the administrative hearing level on September 22, 2007 (AR 16). *See* discussion, *infra*. The record reflects that plaintiff completed the 10th grade and had previous employment as a laborer/ janitor / painter in a plastics factory, a school janitor and commercial cleaner (AR 22, 156). Plaintiff identified her disabling conditions as: arthritis; carpal tunnel; broken back; circulation issues in hands and arms; emotional problems (anxiety, depression, body pain); and difficulty learning (AR 155). On August 23 2012,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 16-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date of April 22, 2011 (AR 18). At step two, the ALJ found that plaintiff suffered from a severe impairments of: status post right carpal tunnel and right ulnar nerve surgery; and panic disorder with agoraphobia (AR 18). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App.1 (AR 19).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> . . . to perform medium work as defined in 20 CFR 416.967(c) which includes lifting or carrying over 50 pounds occasionally or more than 25 pounds frequently except that the claimant is limited to no more than superficial and occasional contact with the general public and to simple, repetitive, one or two step work.

(AR 20). The ALJ further found that plaintiff was unable to perform any past relevant work (AR 22).

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs in the Lower Peninsula of the State of Michigan such as: industrial cleaner (15,000 jobs, medium work); hand packager (2,500 jobs, medium work); and assembly press operator (4,000 jobs, light work) (AR 23). Accordingly, the ALJ Jdetermined that plaintiff has not been under a

disability, as defined in the Social Security Act, since April 22, 2011, the date she filed the application for SSI (AR 24).

### III. ANALYSIS

Plaintiff raised three issues on appeal.

**A. Did the ALJ err when he admitted only part of a previous file and remarked that the medical records he did not admit provided little objective support for claimant's medical treatment?**

In his decision, the ALJ noted that on September 9, 2004, plaintiff "filed a prior claim under Title II and Title XVI that I ultimately denied at the hearing level on September 22, 2007" (AR 16). Based on this record, the ALJ found that "[t]he period through this prior decision is res judicata" (AR 16). In the 2007 decision, plaintiff (known at that time as Brenda L. Barrus) had an alleged disability onset date of December 1, 2003 (AR 60). In this earlier decision, the ALJ found that plaintiff had severe impairments of osteoarthritis, carpal tunnel syndrome, degenerative disc disease of the thoracic spine, status post lumbar transverse fractures, and headaches (AR 63). In addition, the ALJ found that plaintiff could perform medium work, but that her impairments prevented her from: lifting or carrying over 50 pounds occasionally or more than 25 pounds frequently, and performing tasks requiring fine dexterity (AR 66). The ALJ also found that plaintiff could perform her past relevant work as a janitor and press operator, because this work did not require work-related activities precluded by her RFC (AR 69). Accordingly, the ALJ found that plaintiff had not been under a disability from December 1, 2003 through September 22, 2007 (the date of the decision) (AR 69-70).

With respect to plaintiff's present claim, in which she alleged the same disability onset date of December 1, 2003, the ALJ stated:

5

> [W]hen evaluating the current application, Social Security Acquiescence Ruling 98-4 (6), based upon Drummond v. Commissioner of Social Security, 126 F.3d 837 (1997), and Social Security Acquiescence Ruling 98-3 (6), based upon Dennard v. Secretary of Health and Human Services, 907 F. 2d 598 (1990), must be considered. Drummond [sic] requires that the residual functional capacity of a prior Administrative Law Judge be adopted unless there is new and material evidence. Dennard [sic] requires that findings of a prior Administrative Law Judge are essentially binding as to the issues of prior work and transferable skills. In the present claim, new and material evidence relative to the claimant's impairments is present and the claimant's residual functional capacity has been adjusted accordingly. Furthermore, new and additional testimony was offered at the hearing relative to the claimant's past relevant work leading the vocational expert to change the classification of such work to "heavy" as well as to the finding that the claimant is not capable of performing her past relevant work.

(AR 16-17).

Plaintiff contends that the ALJ erred by failing to include all of the medical records from the previous hearing in violation of HALLEX I-2-6-58 (Admitting Evidence into the Record at the Hearing).[2] Plaintiff's claim arising from an alleged violation of HALLEX does not form the basis for a reversal or remand in this court. "[W]hile the HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings." *Hartranft v. Commissioner of Social Security*, No. 3:13-cv-1570, 2015 WL 1383608 at *14 (N.D. Ohio March 25, 2015), citing *Bowie v. Commissioner of Social Security*, 539 F.3d 395, 399 (6th Cir.2008) (observing that the procedural guidance in HALLEX is "not binding on this court"). Accordingly, plaintiff's claim of error should be denied.

> **B.    While the ALJ found that the claimant has a severe mental impairment, did his RFC assessment fully consider the "moderate" impact of this impairment on claimant's ability to concentrate?**

---

[2] The Court notes that the quoted portion of HALLEX I-2-6-58 which appears in plaintiff's brief is not the current version, which was updated on June 9, 2014. Plaintiff does not identify the version of HALLEX quoted in her brief. *See* I-2-6-58, 1993 WL 643036 (S.S.A.).

Plaintiff contends that the ALJ found that she suffered from the "severe mental impairment of depression," that she had "moderate" limitations in her ability to concentrate, and that the ALJ erred because this impairment was not reflected in the RFC. Plaintiff's Brief at pp. ID# 321-22. Plaintiff's contention is without merit. Contrary to plaintiff's assertion, the ALJ did not make a finding that she suffered from a severe impairment of depression (AR 18). The only mental impairment which the ALJ found as severe was "panic disorder with agoraphobia" (AR 18). To the extent plaintiff contests the ALJ's RFC determination, her claim is also without merit. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992). The ALJ addressed plaintiff's mental disorder in the RFC, by limiting her "to no more than superficial and occasional contact with the general public and to simple, repetitive, one or two step work" (AR 20).

To the extent that plaintiff relies on the ALJ's finding that she had a "moderate limitation in concentration, persistence and pace," such reliance is misplaced. The ALJ made this finding at step three of the sequential evaluation when he considered whether plaintiff met the "paragraph B" requirements of various listed mental impairments (12.02, 12.03, 12.04 and 12.06) (AR 19). This finding was not the RFC finding made at step four of the evaluation. *See Gentry v. Commissioner of Social Security*, 741 F.3d 708, 722 (6th Cir. 2014) (RFC is determined at step four of the sequential evaluation); 20 CFR Pt. 404, Subpt. P, App. 1, 12.00.A. ("RFC is a

7

multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder"). As the court explained in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13-cv-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings. . . Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of impairments []. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04, 12.05, 12.06. However, the ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10. This claim of error should be denied.

### C.    Was the ALJ's credibility finding supported by the evidence of record?

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th

Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ commenced his review of plaintiff's claim by setting forth her alleged disabling conditions:

> The claimant is a 49-year-old married female who lives in a house with her family. She testifies she is disabled because she is nervous, and gets upset easily. She alleges she is also depressed and adds she has trouble controlling her anxiety and panics when she has to go out in public. The claimant testifies she cannot control this condition and does not take any medication for her mental impairments. The claimant also indicates she cannot lift heavy things, her hands are stiff and weak, and she cannot stand for a long time. She states she does take Ultram for pain and Flexeril for muscle spasms. In addition, the claimant alleges she has pain in her back, neck, feet, hands, and arms. The claimant also alleges pain due to carpal tunnel surgery on her right hand and arm on May 1, 2012. She states she cares for her husband and son and helps with her dogs. The claimant indicates she occasionally requires assistance putting her pants on and with bathing, particularly washing her hair. Her other allegations include arthritis, a broken back, circulation issues in her hands and arms, and difficulty learning. (1E)

(AR 20-21).

Then, the ALJ addressed plaintiff's mental and physical impairments, stating in pertinent part:

9

> *In terms of the claimant's alleged mental impairments, the record provides little objective support.* The claimant alleges that she experiences depression and anxiety. Yet, she has never seen a psychiatrist or had psychiatric or psychological care. She also alleges a learning disability in math but was never tested or given extra help when she attended school. (2F) Brief notes from Summit Pointe mental health facility reveal a recent diagnosis of "mood disorder and panic disorder with agoraphobia." However, I note the claimant's previous, very sporadic appointments with this facility ended in 2007 due to no shows. She did not avail herself of their services again until June 2012, just prior to her hearing on this claim. . .
>
> As for the claimant's alleged physical limitations, the record contains EMG evidence of significant carpal tunnel and cubital tunnel syndrome in the claimant's right arm and hand, as well as subsequent corrective surgery in May 2012. Post surgery reports indicate the claimant is doing well and is pleased with the results although she continues to complain of some tingling sensation in her hand. (5F) *The record contains no objective evidence to support the claimant's allegations of a broken back, arthritis, circulatory issues, or a learning disability.* . .

(AR 20-21) (emphasis added).

> The ALJ then evaluated plaintiff's credibility:
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant's allegations are not supported by evidence contained in the record. In addition, the claimant admits and the record confirms she has not received treatment for her alleged mental impairments including medication and therapy. The record does reflect a few remote appointments at Summit Point [sic] mental health facility but also records this relationship was ended in 2007 by the facility due to no shows. The claimant did not reestablish contact with Summit Pointe until June 2012 and it remains to be seen whether she finds her impairments severe enough to warrant ongoing treatment. Her lack of treatment and medication test the claimant's credibility on this point. *In addition, the claimant has misstated numerous issues.* She has testified that she last rode horses in 2000 or 2001 and then states the year as 2004. She similarly misstates the dates she last worked; saying she last worked in 2006 when the record shows the claimant worked in 2010. *Given these significant discrepancies, it is difficult to find the claimant's allegations relative to the severity of her symptoms fully credible.*

(AR 22) (emphasis added).  Based on this record, the ALJ's credibility determination is supported by substantial evidence, *see Rogers*, 486 F.3d at 249, and there is no "compelling reason" to disturb it, *Smith*, 307 F.3d at 379.

Finally, plaintiff has raised the now-familiar objection that the ALJ used flawed "boilerplate language" to evaluate his credibility, when the ALJ stated that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 22).  Plaintiff relies on the Seventh Circuit decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), which criticized the Agency's use of this language in ALJ decisions:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" — above is just the foreshadowed conclusion of that later assessment.  A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility.  That gets things backwards.  The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches.  Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be.  In this regard we note the tension between the "template" and SSR 96–7p(4), www. ssa. gov/ OP_ Home/ rulings/ di/ 01/ SSR 96– 07– di– 01. html (visited Jan. 4, 2012), which states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The applicant's credibility thus cannot be ignored in determining her ability to work (her residual functional capacity, in SSA-speak).

*Bjornson*, 671 F.3d at 645-46. The court also opined that "[t]he Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

Notwithstanding the Seventh Circuit's criticism of this "opaque boilerplate," *id.* at 644, that Court did not summarily reverse the ALJ's decision for using the boilerplate, *see id.* at 644-49. Rather, the Court considered the ALJ's specific reasons for rejecting the ALJ's credibility determination. *See id.* at 646 ("[t]he administrative law judge based his doubts about Bjornson's credibility on his assessment of the medical reports or testimony of the three doctors whom we've mentioned"). Similarly, the ALJ's use of the language in this case is not, in and of itself, grounds for reversal because the ALJ also gave specific reasons for rejecting plaintiff's credibility, pointing out: plaintiff's lack of treatment and medication for her alleged impairments, plaintiff's misstatements regarding daily activities (e.g., claiming that she last rode horses in 2000 or 2001, and then changing the date to 2004 (AR 36-37)), and her misstatements regarding her work history (e.g., claiming that she last worked in 2004 when the record established that she worked in 2010 (AR 32-33)) (AR 22). Accordingly, plaintiff's claim of error should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated: July 6, 2015               /s/ Hugh W. Brenneman, Jr.
                                  HUGH W. BRENNEMAN, JR.
                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).